**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

ARTHUR HARRIS,

          Plaintiff,

vs.

CRST VAN EXPEDITED, INC.,

          Defendant.

No. 13-CV-119-LRR

**ORDER**

---

### *TABLE OF CONTENTS*

I.      **INTRODUCTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **RELEVANT PROCEDURAL HISTORY.** . . . . . . . . . . . . . . . . . . . . . . **2**

III.   **SUBJECT MATTER JURISDICTION** .. . . . . . . . . . . . . . . . . . . . . . . **3**

IV.   **SUMMARY JUDGMENT STANDARD.** . . . . . . . . . . . . . . . . . . . . . . **3**

V.    **SUMMARY JUDGMENT FACTS.** . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

VI.   **ANALYSIS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

     **A.**     *FMLA Entitlement Claim.* . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

           **1.**    *Entitlement to FMLA leave* . . . . . . . . . . . . . . . . . . . . . **11**

                 *a.*     *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . **11**

                 *b.*     *Parties' arguments.* . . . . . . . . . . . . . . . . . . . **12**

                 *c.*     *Application.* . . . . . . . . . . . . . . . . . . . . . . . . **12**

           **2.**    *Notice.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

                 *a.*     *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . **13**

                 *b.*     *Parties' arguments.* . . . . . . . . . . . . . . . . . . . **14**

                 *c.*     *Application.* . . . . . . . . . . . . . . . . . . . . . . . . **15**

           **3.**    *Denial of FMLA benefits.* . . . . . . . . . . . . . . . . . . . . . **16**

                 *a.*     *Applicable law.* . . . . . . . . . . . . . . . . . . . . . . **16**

                 *b.*     *Parties' arguments.* . . . . . . . . . . . . . . . . . . . **16**

                 *c.*     *Application.* . . . . . . . . . . . . . . . . . . . . . . . . **17**

     **B.**     *ADA and ICRA Claims.* . . . . . . . . . . . . . . . . . . . . . . . . . **18**

           **1.**    *Burden-shifting framework.* . . . . . . . . . . . . . . . . . . . . **18**

                 *a.*     *Discrimination claim.* . . . . . . . . . . . . . . . . . **19**

                 *b.*     *Retaliation claim.* . . . . . . . . . . . . . . . . . . . **22**

2.    *Failure to accommodate claim* . . . . . . . . . . . . . . . . . . . . . 23
      a.    *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . 23
      b.    *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . 24
      c.    *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . 25
VII.  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## I. INTRODUCTION

The matter before the court is Defendant CRST Van Expedited, Inc.'s ("CRST") Motion for Summary Judgment ("Motion") (docket no. 15).

## II. RELEVANT PROCEDURAL HISTORY

On September 27, 2013, Plaintiff Arthur Harris ("Harris") filed a two-count Petition (docket no. 2) in the Iowa District Court for Linn County, Case No. LACV 79505, alleging interference with Family Medical Leave Act ("FMLA") rights and wrongful discharge in violation of Iowa public policy. On October 30, 2013, CRST removed the action to this court on the basis of federal question jurisdiction. Notice of Removal (docket no. 1). On June 17, 2014, Harris filed an Amended Complaint ("Complaint") (docket no. 10), alleging four claims against CRST: (1) interference with FMLA rights under 29 U.S.C. §§ 2601 et seq. (1) (Count I); (2) wrongful discharge in violation of public policy under Iowa common law (Count II); (3) disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") (Count III); and (4) disability discrimination and retaliation in violation of the Iowa Civil Rights Act ("ICRA") (Count IV). On June 30, 2014, CRST filed an Answer and gave notice of affirmative defenses (docket no. 11). On September 2, 2014, CRST filed the Motion. On October 1, 2014, Harris filed a Partial Resistance (docket no. 20).[1] On October 13, 2014, CRST filed a Reply (docket no. 26).

---

[1] "Harris does not resist summary judgment with respect to the wrongful discharge [in violation of public policy under Iowa common law] claim, [Count II]," but resists the remaining Counts. Partial Resistance at 1 n.1. Therefore, the court shall grant the Motion to the extent that it requests the court grant summary judgment in favor of CRST with respect to the wrongful discharge claim.

In the Partial Resistance, Harris requests oral argument. The court finds that oral argument is unnecessary. The Motion is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has federal question jurisdiction over Harris's claim arising under the FMLA, codified in pertinent part at 29 U.S.C. § 2615(a)(1), and the ADA, codified in pertinent part at 42 U.S.C. §§ 12112(a) and 12203(a). *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over Harris's state law wrongful discharge claim and Iowa Civil Rights Act claims because these claims are so related to the federal claims that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)), *cert. denied*, 132 S. Ct. 1144 (2012). "[S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010). "To survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second alteration in

original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted). The court must view the record "in the light most favorable to the nonmoving party" and afford it all reasonable inferences. *See Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011).

The moving party bears the "initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party must "set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial." *Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## V. SUMMARY JUDGMENT FACTS

Viewing the evidence in the light most favorable to Harris and affording him all reasonable inferences, the uncontested material facts are as follows:

Plaintiff is a resident of Gilbert, Maricopa County, Arizona. CRST is a domestic for-profit corporation with its principal place of business in Cedar Rapids, Linn County, Iowa.

On February 3, 2011, Harris began working for CRST as an over-the-road truck driver. Prior to beginning work with CRST, Harris received a Medical Examiner's Certificate certifying that he was physically qualified to drive without restriction. Upon hiring, Harris was provided a copy of CRST's Driver Handbook and policies. Harris acknowledged receiving and understanding CRST's policies. CRST maintains a policy regarding family and medical leaves of absence that requires drivers to contact CRST's human resources department regarding leave requests. CRST also maintains a policy prohibiting discrimination based on physical disability. Under the policy, drivers who

believe that they have been subjected to discrimination are directed to notify the human resources department. In addition, CRST maintains a home time policy for its drivers, providing that drivers are authorized one day of home time for each week on the road, or a maximum of four days at a time. The policy further provides that any home time longer than four consecutive days may result in the tractor being reassigned. During his employment, Harris's supervisors at CRST had problems with Harris, including excessive home time requests, getting in touch with him while he was on home time and late returns from home time.

On January 18, 2013, Harris visited a doctor for a required Department of Transportation ("DOT") physical. The physician would not certify Harris for driving at that time because his blood pressure was too high. On January 19, 2013, Harris went to the emergency room because his blood pressure was high. The emergency room physician assessed Harris as having pneumonia and hypertension and prescribed hypertension medication and an inhaler. Harris was released from the emergency room that same day and did not have to stay overnight. Harris returned to the doctor for his DOT physical on January 21, 2013, and received his DOT medical certification. Harris continued to work and went back on the road to drive for CRST on January 23, 2013.

On January 29, 2013, Harris's co-driver requested home time due to a family emergency. To accommodate this request, CRST routed Harris and his co-driver to Phoenix, Arizona. Harris was physically able to drive the truck from January 29, 2013 through February 4, 2013, but he elected to wait for his co-driver with the idle truck.

Harris went to the doctor on Monday, February 4, 2013 because he started experiencing chest pains and the back of his eyes were hurting. Before going to the doctor on February 4, 2013, Harris contacted his fleet manager, Joe Anthony, and said he was not feeling well and was going to the doctor. The doctor's notes from Harris's visit provide:

> He feels short of breath much of the time. He feels he cannot get enough air. He has to concentrate to take a deep breath. He went to the emergency room with this at least once. He was given [medication] for blood pressure, doxycycline . . . and [an] albuterol inhaler. He had high blood pressure, asthma, and pneumonia as diagnoses. He feels hot at times. He feels panicky. He feels like he cannot get enough air. The inhaler does not seem to help him much. He sat a few minutes and his first blood pressure was 130/85. His next blood pressure was 120/80. He will remain on [blood pressure medication] and those meds were renewed. . . . He does not feel well enough to return to driving. He is feeling anxious. I [prescribed Xanax]. I asked him to come back on Friday for a [follow-up] and to finish a physical.

February 4, 2013 Doctor's Notes, Harris Resistance Appendix ("Harris App'x") (docket no. 20-3) at 39. Harris's doctor provided him with a work excuse on February 4, 2013, stating that the "[p]atient [was] seen [and is] unable to work due to chest problems. He will remain off work indefinitely [and] be seen again for re-evaluation" on Friday, February 8, 2013. Work Excuse, Harris App'x (docket no. 20-3) at 46.

Sometime after the appointment on February 4, 2013, Harris informed Anthony that he was experiencing chest pains, hypertension and pneumonia.[2] During this phone call, Anthony stated that he did not believe Harris and inquired as to when Harris would be able to return to work. Harris informed Anthony that he needed the reasonable accommodation of a few days' medical leave, *see* Harris's Response to CRST's Statement of Undisputed Facts (docket no. 20-2) ¶ 39, and that he was off work at least until his medical re-evaluation on February 8, 2013, when he would return to work if released that day.

Anthony asked Harris to send a fax of the work excuse obtained from the doctor's appointment. At some point thereafter, Anthony told CRST Operations Manager, Marcus

---

[2] It is not clear whether this conversation took place on February 4, 2013 or February 5, 2013. *Compare* Harris Deposition, CRST Appendix ("CRST App'x") (docket no. 15-2) at 16, *with* Harris Answer to Interrogatories, Harris App'x (docket no. 20-3) at 35.

Schneider, that he was expecting to receive a work excuse from Harris. Harris and his then-girlfriend sent a fax to Anthony on February 5, 2013.[3] The cover sheet of the fax read, "attached is a copy of Arthur's doctor note, excusing him from work until his next scheduled appointment on 2/8/2013." February 5, 2013 Fax, Harris App'x (docket no. 20-3) at 44. However, instead of sending a fax of the work excuse, Harris inadvertently sent a fax of his Medical Examiner's Certificate. Harris Deposition, Harris App'x (docket no. 20-3) at 26; February 5, 2013 Fax, Harris App'x (docket no. 20-3) at 44-45. Harris informed Anthony that he had sent the fax after doing so. Anthony received the fax at his work e-mail address on February 5, 2013. The last time Anthony spoke to Harris, Harris "had said that he needed extra time off because of his health." Anthony Deposition, Harris App'x (docket no. 20-3) at 15. No one from CRST ever told Harris that he should fill out an FMLA application or have his doctor complete a certification form.

CRST periodically reassigns or "reseats" trucks to different drivers when they have been idle for too long. Schneider called Harris on February 7, 2013 and left a voicemail message informing him that his truck was being reassigned and that he needed to remove his personal belongings from the truck so that they did not get lost. Schneider, who had authority to terminate employees, did not terminate Harris's employment through this voicemail. After receiving the voicemail on February 7, 2013, Harris returned Schneider's call at about 10:00 a.m. that same date and informed Schneider that he was on medical leave until his medical re-evaluation the next day, February 8, 2013. During this phone call, Schneider told Harris that he had to terminate his employment.

Harris returned to the doctor on February 8, 2013, for his scheduled re-evaluation. Harris's doctor's notes from that visit provide:

---

[3] In his deposition, Harris initially indicates that he actually sent the fax on February 4, 2013, *see* Harris Deposition, Harris App'x (docket no. 20-3) at 26, but the fax receipt states that the fax was sent on February 5, 2013, *see* February 5, 2013 Fax, Harris App'x (docket no. 20-3) at 43.

> In for general physical and has developed a 2-3 day respiratory illness since the last visit. He has found Xanax helpful . . . . He is remaining on [blood pressure medication] and that should be continued. . . . He has been off work this week and unable to drive due to his previous illness. He is now unable to drive due to his respiratory illness. He was given a note that he will return to work when he is not contagious and the fever is gone.

February 8, 2013 Doctor's Notes, Harris App'x (docket no. 20-3) at 39. Harris's doctor also prescribed antibiotics at this appointment. *Id.*

On February 8, 2013, Harris applied for employment as a truck driver with Greco & Sons of Arizona ("Greco & Sons"). Harris noted on his job application that he was still employed by CRST but was available for work that day. Harris was hired by Greco & Sons and underwent a medical examination to obtain his Medical Examiner's Certificate. On the health history portion of his medical examination report, Harris indicated that he did not have high blood pressure or any other medical condition.[4] Harris was issued a medical certification to drive on February 20, 2013.

## VI. ANALYSIS

### A. FMLA Entitlement Claim

"The FMLA was enacted in the wake of increasing struggle between work and family life." *Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 676 (8th Cir. 2001). It "provides job security to employees who must miss work because of their own illnesses, to care for family members, or to care for new babies." *Stallings v. Hussmann Corp.*, 447

---

[4] The court notes that Harris's job application and medical examination report is inconsistent with his testimony that he was terminated by CRST on February 7, 2013, and that he had various medical conditions. However, Harris indicated that he did not inform the medical examiner of his blood pressure because he needed the job at Greco & Sons and was afraid he would not be hired. CRST App'x (docket no. 15-2) at 17. Harris provides no explanation for indicating on his job application that he was still employed by CRST as of February 8, 2013. Despite this, weighing Harris's credibility is the function of the jury.

F.3d 1041, 1050 (8th Cir. 2006) (citing 29 U.S.C. § 2612(a)(1)(A)-(D)). "To help ease the growing tension between work and family, the FMLA establishes a right to unpaid family and medical leave for [eligible] employees . . . ." *Hatchett*, 251 F.3d at 676. Specifically, "[t]he FMLA provides employees with twelve work-weeks of leave during any twelve-month period if they have a serious health condition that makes them unable to perform the functions of their position." *Ballato v. Comcast Corp.*, 676 F.3d 768, 772 (8th Cir. 2012) (citing 29 U.S.C. § 2612(a)(1)(D)).

As a preliminary matter, the court notes that the parties have framed Harris's FMLA claim as an "interference" claim arising under 29 U.S.C. § 2615(a)(1). The Eighth Circuit recently articulated that an interference claim under 29 U.S.C. § 2615(a)(1) may more appropriately be described "as an 'entitlement' claim—[where] an employee claims the denial of a benefit to which he [or she] is entitled under the statute." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012). The court agrees that Harris's claim arises under § 2615(a)(1), but, as suggested by the Eighth Circuit in *Pulczinski*, the court will discuss this claim in terms of an "entitlement" claim, because Harris asserts that he was denied a benefit under the FMLA when he was terminated rather than granted FMLA leave.

The Eighth Circuit has summarized an entitlement claim as follows:

> An employer is prohibited from interfering with, restraining, or denying an employee's exercise of or attempted exercise[] of any right contained in the FMLA. 29 U.S.C. § 2615(a)(1). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under [the] FMLA." 29 C.F.R. § 825.220(b). An employer's action that deters an employee from participating in protected activities constitutes an "interference" or "restraint" of the employee's exercise of his [or her] rights. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). "A violation of this provision creates what is commonly known as the interference theory of

recovery." *Throneberry v. McGehee Desha Cnty. Hosp.*, 403
F.3d 972, 977 (8th Cir. 2005). When an employer attaches
negative consequences[5] to the exercise of protected rights, it
has "chilled" the employee's willingness to exercise those
rights because he or she does not want to be fired or
disciplined for doing so. *Bachelder*, 259 F.3d at 1124.

*Stallings*, 447 F.3d at 1050 (footnote added). Moreover, the Eighth Circuit has explained
that:

An employee can prevail under an interference theory if he
was denied substantive rights under the FMLA for a reason
connected with his FMLA leave. "[E]very discharge of an
employee while [he] is taking FMLA leave interferes with an
employee's FMLA rights. However, the mere fact of
discharge *during* FMLA leave by no means demands an
employer be held strictly liable for violating the FMLA's
prohibition of interfering with an employee's FMLA rights."
Thus, where an employer's reason for dismissal is
insufficiently related to FMLA leave, the reason will not
support the employee's recovery.

*Id.* at 1051 (alteration in original) (footnote omitted) (citations omitted) (quoting
*Throneberry*, 403 F.3d at 980). In other words, to establish his entitlement claim under
29 U.S.C. § 2615(a)(1), Harris must prove five elements: (1) Harris was an "[e]ligible
employee" under 29 U.S.C. § 2611(2); (2) CRST was a covered "employer" under 29
U.S.C. § 2611(4); (3) Harris "was entitled to FMLA leave" under 29 U.S.C. §
2612(a)(1); (4) Harris gave CRST "notice of [his] intent to take FMLA leave" under 29
U.S.C. § 2612(e)(1); and (5) CRST "denied [Harris] FMLA benefits to which [he] was
entitled." *Schoonover v. ADM Corn Processing*, No. 06-CV-0133-LRR, 2008 WL
282343, at *12 (N.D. Iowa Jan. 31, 2008); *see also, e.g.*, *Wysong v. Dow Chem. Co.*, 503

---

[5] Negative consequences include using "the taking of FMLA leave as a negative
factor in employment actions, such as hiring, promotions or disciplinary actions." *Ballato*,
676 F.3d at 772 (quoting 29 C.F.R. § 825.220(c)).

F.3d 441, 447 (6th Cir. 2007); *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006).

CRST admits that Harris can prove that he was an eligible employee and that CRST is a covered employer. Brief in Support of the Motion (docket no. 15-4) at 6. Therefore, the court only addresses the three disputed elements of the FMLA entitlement claim.

### 1.     Entitlement to FMLA leave

#### a.     Applicable law

"The initial burden of proof in an FMLA [entitlement] case is on the employee to show only that he or she was entitled to the benefit denied." *Ballato*, 676 F.3d at 772 (quoting *Stallings*, 447 F.3d at 1058) (internal quotation marks omitted). "[A]n eligible employee is entitled to 12 workweeks of leave during any 12-month period if he or she has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 851 (8th Cir. 2002) (quoting 29 U.S.C. § 2612(a)(1)(D)). "A 'serious health condition' is any 'illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a healthcare provider.'" *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (quoting 29 U.S.C. § 2611(11)). "Inpatient care" requires the plaintiff to have stayed overnight in a hospital or similar facility. *See* 29 C.F.R. § 825.114. "Continuing treatment" means:

> A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (1) Treatment two or more times, within 30 days of the first day of incapacity . . . or
>
> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

*Id.* § 825.115(a). Harris does not contend that his health condition involved "inpatient care." To show that his health condition required "continuing treatment," Harris must prove: "(1) that [he] had a 'period of incapacity requiring absence from work,' (2) that this period of incapacity exceeded three days, and (3) that [he] received 'continuing treatment by . . . a health care provider within the period.'" *Rankin v. Seagate Techs., Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001) (third alteration in original) (quoting *Thorson v. Gemini, Inc.*, 205 F.3d 370, 377 (8th Cir. 2000)).

"[T]he fact that an employee is 'sufficiently ill to see a physician two times in a period of just a few days' is all that [the] FMLA requires for 'continuing treatment.'" *Rankin*, 246 F.3d at 1149 (quoting *Thorson*, 205 F.3d at 379).

### b.    *Parties' arguments*

CRST argues that Harris's "period of incapacity—February 4, 2013 through February 8, 2013—was not followed by (a) subsequent treatment at least two times within 30 days; or (b) subsequent treatment, which resulted in a regimen of continuing treatment." Brief in Support of the Motion at 8. In turn, Harris argues that his period of incapacity exceeded three days and involved treatment two or more times—on February 4, 2013 and again on February 8, 2013. Brief in Support of the Partial Resistance (docket no. 21-1) at 10-11. According to CRST, Harris's argument "fails to recognize that the continuing treatment must be subsequent to a period of incapacity lasting more than three days." Brief in Support of the Reply (docket no. 25-1) at 2 (emphasis omitted). Therefore, CRST argues that Harris's claim must fail because he has "alleged no facts showing a period of incapacity lasting more than three days prior to his receipt of treatment for his alleged health condition" and, thus, he was not entitled to FMLA leave. *Id.*

### c.    *Application*

The court finds that there is a genuine issue of material fact about whether Harris was entitled to FMLA leave. The parties agree that Harris had a period of

incapacity—February 4, 2013 through February 8, 2013—that required his absence from work. This period of incapacity clearly exceeded three days. However, the parties disagree about whether Harris received continuing treatment.

Harris received treatment on February 4, 2013 and again on February 8, 2013, per his doctor's request. Harris's doctor's notes from February 4, 2013 indicate that he would be seen again for "re-evaluation" of his condition on February 8, 2013. A reasonable jury could find that Harris received continuing treatment for his serious medical condition given that his period of incapacity included two visits to the doctor for the same condition. Thus, Harris has generated a genuine issue of material fact on the issue of whether he was entitled to FMLA leave.

### 2. Notice

#### a. Applicable law

Even if an employee is entitled to FMLA leave, he or she must also "show that he [or she] gave his [or her] employer adequate and timely notice of his [or her] need for [FMLA] leave." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 991 (8th Cir. 2005). "When leave is needed for an unforeseeable event, notice is required 'as soon as practicable.'" *Phillips*, 547 F.3d at 909 (quoting 29 C.F.R. § 825.302(a)). "This ordinarily means at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee." *Id.* (quoting *Spangler*, 278 F.3d at 852) (internal quotation marks omitted).

"An employee need not invoke the FMLA by name in order to put an employer on notice that the Act may have relevance to the employee's absence from work." *Thorson*, 205 F.3d at 381; *see also* 29 C.F.R. § 825.303(b) ("When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA."). "Although the employee need not name the statute, . . . he [or she] must provide information to suggest that his [or her] health condition could be serious." *Woods*, 409 F.3d at 990 (citation omitted). "Employees thus

have an 'affirmative duty to indicate both the need and the reason for the leave,' and must let employers know when they anticipate returning to their position." *Id.* at 990-91 (quoting *Sanders v. May Dep't Stores Co.*, 315 F.3d 940, 944 (8th Cir. 2003)). Therefore, "the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." *Thorson*, 205 F.3d at 381 (quoting *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999)) (internal quotation marks omitted).

However, upon receiving adequate and timely notice, "[a]n employer may require that a request for leave is supported by certification from a health care provider." *Chappell v. Bilco Co.*, 675 F.3d 1110, 1116 (8th Cir. 2012) (citing 29 U.S.C. § 2613(a)); *see also* 29 C.F.R. § 825.302(c) ("In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken."). "Whether an employee gave sufficient information to put his or her employer on notice that an absence may be covered by the FMLA is a question of fact for the jury," *Phillips*, 547 F.3d at 909, and "requires consideration of the totality of the circumstances," *Murphy v. FedEx Nat'l LTL, Inc.*, 618 F.3d 893, 903 (8th Cir. 2010).

### b.    *Parties' arguments*

CRST argues that "Harris'[s] claimed notice to CRST was insufficient to allow CRST to determine whether the leave Harris was requesting qualified under the FMLA." *Id.* In support of its argument, CRST cites a case from the United States District Court for the District of Minnesota which held that an employee's notice was insufficient when the employee informed the company that he was "sick" and provided a doctor's notice that only stated "[o]ff work until Mon[day]." *Id.* at 10 (citing *Goodman v. BestBuy, Inc.*, No. 05-1657(DSD/JJG), 2006 WL 3486990, at *4 (D. Minn. Dec. 4, 2006)). CRST argues that "[r]equiring an employer to investigate whether FMLA leave is appropriate whenever

an employee calls in to report only that he is 'sick' would be 'unduly burdensome' and inconsistent with the purpose of the FMLA." Brief in Support of the Reply at 5.

Harris argues that his notice was sufficient because he informed Anthony of his medical conditions, sent a fax of the work excuse and indicated to Anthony that he would return to work on February 8, 2013 if released to do so by his doctor. Brief in Support of the Partial Resistance at 13.

### c. *Application*

The court finds that there is a genuine issue of material fact about whether Harris provided adequate and timely notice of his need for FMLA leave. The parties agree that Harris's notice was timely, as he informed Anthony that he was going to the doctor prior to the appointment and as soon as his symptoms arose. However, the parties disagree about whether Harris's notice was adequate to notify CRST that he may have been in need of FMLA leave. Viewing the evidence in the light most favorable to Harris and affording him all reasonable inferences, Harris's notice to CRST consisted of the following: (1) prior to going to his doctor's appointment on February 4, 2013, Harris called Anthony and informed him that he was having chest pains and was going to the doctor; (2) after visiting the doctor on February 4, 2013, Harris informed Anthony of his chest pains, hypertension and pneumonia; (3) after visiting the doctor on February 4, 2013, Harris informed Anthony that he was given a work excuse and would be off work until February 8, 2013 when he would be re-evaluated and would return to work if released to do so; (4) at Anthony's request, Harris sent him a fax with a cover sheet stating "[a]ttached is a copy of Arthur's doctor note, excusing him from work until his next scheduled appointment on 2/8/2013," although the doctor's note was not attached; and (5) after having sent the fax, Harris informed Anthony of having done so.

The Eighth Circuit has held that notice is not adequate when the employee merely requests "sick leave" without indicating that he is suffering from a serious health condition or when he would return to work. *See Woods*, 409 F.3d at 991 (citing *Carter v. Ford*

15

*Motor Co.*, 121 F.3d 1146, 1147 (8th Cir. 1997); *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008-09 (7th Cir. 2001)). However, contrary to CRST's argument, Harris's notice provided substantially more information, including that he was suffering from chest pains, hypertension and pneumonia, he was scheduled for re-evaluation on February 8, 2013 and he would return to work thereafter if released by his doctor. Given the totality of the circumstances, a reasonable jury could find that Harris provided enough information to put CRST on notice that he may be in need of FMLA leave. Thus, Harris has generated a genuine issue of material fact on the issue of whether he provided CRST with adequate notice of his need for FMLA leave.

### 3. *Denial of FMLA benefits*

#### a. *Applicable law*

Finally, an employee must show that he or she "was denied substantive rights under the FMLA for a reason connected with his [or her] FMLA leave." *Stallings*, 447 F.3d at 1050. While every discharge of an employee can potentially interfere with the employee's FMLA rights, *see Throneberry*, 403 F.3d at 980, "[t]he employer is not liable for this interference . . . 'where an employee's reason for dismissal is insufficiently related to FMLA leave,'" *Phillips*, 547 F.3d at 911 (third alteration in original) (quoting *Stallings*, 447 F.3d at 1051). "The burden is on the employer to prove the reason for termination was unrelated to [the] FMLA." *Id.* "[A]n employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 934 (8th Cir. 2011) (quoting *Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010)) (internal quotation marks omitted).

#### b. *Parties' arguments*

CRST argues that it did not deny Harris a benefit under the FMLA because it did not terminate him until February 18, 2013, when it removed him from the employee

database for going "missing in action" after repeatedly attempting to contact him to get him to return to work. Brief in Support of the Motion at 11-12. Harris argues that CRST terminated his employment when he returned Schneider's phone call after receiving his voicemail on February 7, 2013. Brief in Support of the Partial Resistance at 17-18.

### c.    Application

The court finds that there is a genuine issue of material fact about whether CRST denied Harris FMLA benefits for a reason connected to his FMLA leave. CRST contends that no one from CRST spoke with Harris immediately after Schneider left the voicemail on February 7, 2013. CRST further claims that it made numerous attempts to contact Harris thereafter and that it eventually terminated Harris on February 18, 2013 for going "missing in action." Brief in Support of the Motion at 12. However, CRST has no record or documentation of these events. The only evidence in the record is the testimony of CRST employees in depositions and statements in interrogatories where they contend that Harris was not terminated until February 18, 2013 for a reason unrelated to FMLA leave. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) ("'Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' . . . Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." (quoting *Liberty Lobby*, 477 U.S. at 255)). Viewing the evidence in the light most favorable to Harris and affording him all reasonable inferences, a reasonable jury could conclude that Harris returned Schneider's phone call and was terminated on February 7, 2013, which resulted in him applying for a new job with Greco & Sons on February 8, 2013.

The Eighth Circuit has explained that "the crucial point for determining whether the employer would have made the same decision is the date on which the employer actually interfered with [the] employee's FMLA rights." *Throneberry*, 403 F.3d at 981 n.7. If the jury were to find that Harris was, in fact, terminated on February 7, 2013, it would be

reasonable for the jury to then conclude that CRST would not have terminated Harris had he not attempted to exercise his FMLA leave from February 4, 2013 through February 8, 2013. Thus, Harris has generated a genuine issue of material fact on the issue of whether he was denied FMLA benefits for a reason connected to his FMLA leave.

Accordingly, the court shall deny the Motion to the extent that it requests the court grant summary judgment in favor of CRST with respect to the FMLA claim.

## B. ADA and ICRA Claims

Harris alleges disability discrimination, disability retaliation and failure to accommodate under the ADA and the ICRA. Disability claims under the ICRA are analyzed under the same framework as claims brought under the ADA. *See Tjernagel v. Gates Corp.*, 533 F.3d 666, 671 (8th Cir. 2008). Because the parties do not argue that Harris's ICRA claims should be analyzed differently than his ADA claim, the court shall analyze both claims under the federal framework. *See McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005) (declining to "forge new ground" under the ICRA where neither party argued that the federal framework should not apply).

### 1. Burden-shifting framework

Where an employee "alleges a claim of discriminatory disparate treatment [or retaliation], then the traditional burden-shifting framework of *McDonnel Douglas* will apply." *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711-12 (8th Cir. 2003); *see also Peebles v. Potter*, 354 F.3d 761, 770 (8th Cir. 2004) (stating that *McDonnel Douglas* burden-shifting framework applies to ADA retaliation cases). In these cases, the employee "must initially establish each element of the prima facie case." *Fenney*, 327 F.3d at 712. "The employer 'must then rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action.'" *Id.* (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc)). "If the employer does this, then 'the burden of production shifts back to the

plaintiff to demonstrate that the employer's non-discriminatory reason is pretextual.'" *Id.*
(quoting *Kiel*, 169 F.3d at 1135)). The Eighth Circuit has explained that:

> To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason. This burden will not be met by simply showing that the reason advanced by the employer was false; rather, [the plaintiff] must demonstrate that a discriminatory animus lies behind the defendant['s] neutral explanations. Specifically, the plaintiff must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination.

*McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (first alteration in original) (quoting *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998)). "To prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a 'phony excuse.'" *Id.* (quoting *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005)) (internal quotation marks omitted).

### a. Discrimination claim

"The ADA prohibits an employer from discriminating against an employee 'because of the disability of such individual.'" *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007) (footnote omitted) (quoting *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 686 (8th Cir. 2003)). "To establish discrimination under the ADA, an employee must show that [he or] she (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of [his or] her disability." *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013).

CRST does not dispute that Harris can establish that he is disabled[6] and that he is a qualified individual. Brief in Support of the Motion at 17. CRST only argues that it did not terminate Harris's employment due to any alleged disability but rather because he went "missing in action" after the company was unable to get in contact with him. *Id.* at 18.

The court finds that there is a genuine issue of material fact about whether Harris was terminated as a result of his disability. To establish this causal element, "[t]emporal proximity between the [disability] and the adverse action 'must be very close' for timing alone to be sufficient." *Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014) (quoting *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012)); *see also Prod. Fabricators, Inc.*, 763 F.3d at 969 (noting that a "temporal connection can demonstrate a causal link between an adverse employment action and the employee's disability"). Harris's doctor directed that he not work from February 4, 2013 through February 8, 2013, due to his health condition, which the court assumes for purposes of the Motion constitutes a disability.

---

[6] A "disability" under the ADA is "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." *Samuels v. Kansas City Mo. Sch. Dist.*, 437 F.3d 797, 801 (8th Cir. 2006) (alteration in original) (quoting 42 U.S.C. § 12102(1)(A)) (internal quotation marks omitted). "The impairment must be substantial, that is, considerable or to a large degree." *Id.* An individual is substantially limited in a major life activity if that person is "unable to perform a basic function the average person in the general population can perform, or is significantly restricted in the condition, manner, or duration under which she can perform a major life activity as compared to an average person in the general population." *Id.*

In the Motion, CRST argues that "the undisputed facts demonstrate that [Harris] is not disabled within the meaning of the [ADA] or the [ICRA]." Motion at 2. However, in its Brief in Support of the Motion, CRST states that, "[f]or purposes of summary judgment only," it does not dispute that Harris is disabled under the ADA or that he is a qualified individual under the ADA. Brief in Support of the Motion at 17. Aside from these two contrary statements, CRST does not address whether Harris is disabled under the ADA. Harris has not identified any major life activity or demonstrated how such activity is substantially limited by his health condition. However, as CRST has elected not to dispute Harris's disability for purposes of summary judgment, Harris may attempt to prove this element at trial.

Harris informed CRST of his disability and need for leave on February 4, 2013 and February 5, 2013 via communications with Anthony. Harris further informed CRST of his disability on February 7, 2013, when he returned Schneider's phone call and indicated that he needed to remain on leave until his follow-up appointment on February 8, 2013. Therefore, Harris's need for medical leave due to his disability commenced on February 4, 2013, and he was subsequently terminated only three days later on February 7, 2013. The court finds that this close temporal proximity is sufficient to generate a genuine issue of material fact on the issue of whether Harris was terminated as a result of his disability. *See Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (holding that employee's leave beginning on January 1 and subsequent termination occurring on January 14 was sufficient alone to establish causation for prima facie case under the FMLA).

Because CRST does not dispute the first two elements of the prima facie case and Harris has generated a genuine issue of material fact on the third element, the court finds that Harris has sufficiently established a prima facie case for his discrimination claim.

The court further finds that CRST has not articulated a legitimate, non-discriminatory reason for Harris's termination. Although CRST argues that Harris was terminated on February 18, 2013, for going "missing in action" after the company was unable to get in contact with him, *see* Brief in Support of the Motion at 19, viewing the evidence in the light most favorable to Harris, the court assumes that Harris was actually terminated when he returned Schneider's phone call on February 7, 2013, while on leave for his disability. Thus, CRST has not met its burden of proffering a legitimate, non-discriminatory reason for terminating Harris prior to the assumed termination date of February 7, 2013, and the burden has not shifted to Harris to show pretext.[7]

---

[7] Even if CRST has met its burden of articulating a legitimate, non-discriminatory reason for Harris's termination, the court finds that Harris has met his burden of demonstrating pretext. Despite CRST's argument that it did not terminate Harris until February 18, 2013, a reasonable jury could conclude that Harris was terminated on

(continued…)

Accordingly, the court shall deny the Motion to the extent that it requests the court grant summary judgment in favor of CRST with respect to the ADA and ICRA discrimination claims.

### b.    *Retaliation claim*

"To establish unlawful retaliation under the ADA, a plaintiff must show that (1) she engaged in a statutorily protected activity, (2) the employer took an adverse action against her, and (3) there was a causal connection between the adverse action and protected activity." *Hill*, 737 F.3d at 1218.

CRST does not dispute that Harris engaged in a statutorily protected activity in the form of requesting an accommodation. Brief in Support of the Motion at 21. CRST argues that Harris was not terminated until February 18, 2013, for going "missing in action" after the company was unable to get in contact with him. *Id.* at 21-22. It appears as though CRST contends that this negates both the adverse action element and the causation element of Harris's prima facie case of retaliation. *Id.*

The court finds that there is a genuine issue of material fact about whether Harris suffered an adverse employment action by being terminated on February 7, 2013, when he returned Schneider's phone call. *See Phillips*, 547 F.3d at 912 n.4 ("Unquestionably, termination is an adverse employment action.").

The court further finds that there is a genuine issue of material fact about whether there was a causal connection between Harris's termination and his request for medical leave as a result of his disability. Although "more than a temporal connection between the protected conduct and the adverse employment action is [generally] required to present a

_____

[7](…continued)
February 7, 2013, only three days after informing CRST of his disability and need for medical leave. Such a finding would render CRST's proffered reason for Harris's termination false. Therefore, Harris has offered sufficient evidence to infer discrimination on the basis of his disability and, thus, has demonstrated a genuine issue of material fact as to pretext.

genuine issue of fact on retaliation," where temporal proximity is "very close," timing alone is sufficient to establish causation.  *Lors*, 746 F.3d at 865; *see also Prod. Fabricators, Inc.*, 763 F.3d at 969 (noting that a "temporal connection can demonstrate" the necessary causal link).  For the reasons set forth in the court's causation analysis for Harris's discrimination claim, the court finds that Harris has generated a genuine issue of material fact on the issue of causal connection between his termination and his request for medical leave as a result of his disability.

Because CRST does not dispute the first element of the prima facie case and Harris has generated a genuine issue of material fact on the second and third elements, the court finds that Harris has sufficiently established a prima facie case for his retaliation claim.

Moreover, the court finds that CRST has not articulated a legitimate, non-discriminatory reason for Harris's termination for the same reasons as those set forth in the court's analysis of the discrimination claim.  The burden has not shifted to Harris to show pretext.[8]

Accordingly, the court shall deny the Motion to the extent that it requests the court grant summary judgment in favor of CRST with respect to the ADA and ICRA retaliation claims.

### 2. *Failure to accommodate claim*

#### a. *Applicable law*

Where an employee alleges a failure to accommodate claim, the court applies a modified burden-shifting analysis.  *Id.*  "This is so because a claim against an employer for failing to reasonably accommodate a disabled employee does not turn on the employer's intent or actual motive."  *Peebles*, 354 F.3d at 766.  Under this analysis, the

---

[8] As set forth in the court's analysis of the discrimination claim, even if CRST has met its burden of articulating a legitimate, non-discriminatory reason for Harris's termination, the court finds that Harris has generated a genuine issue of material fact about whether CRST's proffered reason is pretextual.

employee "at all times retains the burden of persuading the trier of fact that he has been the victim of illegal discrimination due to his disability." *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1995). Therefore, the employee "must first make a facial showing that he has an ADA disability and that he has suffered adverse employment action. Then he must make a facial showing that he is a 'qualified individual.'" *Fenney*, 327 F.3d at 712. Furthermore, in a failure to accommodate case, "the 'discrimination' is 'framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations,' as required by the ADA." *Prod. Fabricators, Inc.*, 763 F.3d at 971 (quoting *Peebles*, 354 F.3d at 767). "In order to determine whether an accommodation is necessary, and if so, what that accommodation may be, the employer and employee must engage in the 'interactive process.'" *Id.* (quoting *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 903 (8th Cir. 2009)). To demonstrate that the employer did not participate in the interactive process, an employee must demonstrate the following:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Id.* (citing *Peyton*, 561 F.3d at 902).

### b.    Parties' arguments

CRST argues that, "at most, . . . CRST had notice of the fact that [Harris] was excused from work for 'chest problems'" and that none of his managers had "knowledge regarding the extent of [Harris's] health condition." Brief in Support of the Reply at 7. CRST further contends that Harris did not request any specific accommodation other than "a few days' medical leave" and that this request was granted. *Id.* at 7-8 (internal quotation marks omitted). Finally, CRST again argues that it repeatedly attempted to contact Harris through February 18, 2013 but could not get in contact with him. *See id.*

at 9.  CRST contends that this resulted in Harris's failure to engage in the interactive process.  *Id.* at 9-10.

Harris argues that he sufficiently notified CRST about his disability via his communications with both Anthony and Schneider.  Brief in Support of the Partial Resistance at 22-23.  Harris further argues that he requested a reasonable accommodation when he asked CRST for medical leave from February 4, 2013 through February 8, 2013.  *Id.* at 23-25.  Finally, Harris contends that CRST failed to engage in the interactive process by terminating him on February 7, 2013.  *Id.* at 27.

### c.    Application

The court has already determined that Harris has sufficiently established a prima case showing that he is disabled, that he suffered an adverse employment action and that he is a qualified individual.  Therefore, the court turns to whether Harris has established that CRST failed to engage in the interactive process.

The court finds that there is a genuine issue of material fact about whether CRST failed to engage in the interactive process.  First, Harris informed Anthony of his chest pains, hypertension and pneumonia on February 4, 2013.  Assuming, because CRST does not argue otherwise, that Harris's diagnoses constitute a disability under the ADA, the court finds that there is a genuine issue of material fact about whether CRST had knowledge of his disability.  Second, the court finds that there is a genuine issue of material fact about whether Harris's request for medical leave from February 4, 2013 through February 8, 2013 constituted a request for a reasonable accommodation.  *See Browning*, 178 F.3d at 1049 n.3 (noting that medical leave may be a reasonable accommodation in appropriate circumstances).  Third, the court finds that there is a genuine issue of material fact about whether CRST made a good faith effort to assist Harris in seeking this accommodation when, viewing the facts in the light most favorable to Harris, it terminated Harris on February 7, 2013 during his requested medical leave.  Fourth, the court finds that there is a genuine issue of material fact about whether, but for

CRST terminating Harris, CRST could have reasonably accommodated Harris by granting his requested medical leave.

Given the foregoing, the court finds that Harris has generated a genuine issue of material fact about whether CRST failed to engage in the interactive process by terminating him on February 7, 2013 during his requested leave. Accordingly, the court shall deny the Motion to the extent that it requests the court grant summary judgment in favor of CRST with respect to the ADA and ICRA failure to accommodate claims.

## VII. CONCLUSION

In light of the foregoing, CRST's Motion for Summary Judgment (docket no. 15) is **DENIED IN PART** and **GRANTED IN PART** as follows:

(1) With respect to the FMLA claim (Count I), the ADA claims (Count III) and the ICRA claims (Count IV), the Motion is **DENIED**.

(2) With respect to the wrongful discharge claim (Count II), the Motion is **GRANTED**.

(3) This case will proceed to trial as scheduled.

**IT IS SO ORDERED.**

**DATED** this 26th day of November, 2014.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA