**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

ARTHUR HARRIS,

        Plaintiff,

vs.

CRST VAN EXPEDITED, INC.,

        Defendant.

No. 13-CV-119-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **RELEVANT PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

    A.    *CRST Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
        1.    *Involvement in other lawsuits* . . . . . . . . . . . . . . . . . . . **4**
        2.    *Other unrelated claims or settlements* . . . . . . . . . . . . . . . **4**
        3.    *Not calling witnesses to testify* . . . . . . . . . . . . . . . . . . . **4**
        4.    *Number of attorneys or personnel and*
             *amount of available resources* . . . . . . . . . . . . . . . . . . . **5**
        5.    *Financial condition of CRST and related references* . . . . . . . **5**
        6.    *Reference to any related corporations* . . . . . . . . . . . . . . . **5**
        7.    *Settlement discussions in the instant action* . . . . . . . . . . . . **5**
        8.    *Statements or reports made or drafted by individuals not*
             *testifying at trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
        9.    *Suggestions regarding testimony of witnesses not*
             *called to testify* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
        10.   *Demands or requests for items not the subject of discovery* . . . **8**
        11.   *Expert witnesses* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
        12.   *Exhibits or witnesses not previously disclosed* . . . . . . . . . . . **9**
    B.    *Harris Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
        1.    *Settlement negotiations* . . . . . . . . . . . . . . . . . . . . . . . **11**
        2.    *Unemployment insurance benefits* . . . . . . . . . . . . . . . . . **11**
        3.    *Harris's pursuit of a worker's compensation claim* . . . . . . . **11**

    **4.**     ***Iowa Civil Rights Commission's screening decision*** . . . . . . . **12**
    **5.**     ***Harris's criminal history*** . . . . . . . . . . . . . . . . . . . . . . . **13**
        ***a.***     ***Character evidence*** . . . . . . . . . . . . . . . . . . . . . . . **13**
        ***b.***     ***After-acquired evidence doctrine*** . . . . . . . . . . . . . . . **14**
**IV.**   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

## I. INTRODUCTION

The matters before the court are Defendant CRST Van Expedited, Inc.'s ("CRST") Motion in Limine ("CRST Motion") (docket no. 34) and Plaintiff Arthur Harris's Motion in Limine ("Harris Motion") (docket no. 35).

## II. RELEVANT PROCEDURAL HISTORY

On June 17, 2014, Harris filed an Amended Complaint (docket no. 10) alleging that CRST interfered with Harris's Family Medical Leave Act ("FMLA") leave rights (Count 1), wrongfully discharged him in violation of Iowa public policy (Count 2), discriminated and retaliated against him in violation of the Americans with Disabilities Act ("ADA") (Count 3) and discriminated and retaliated against him in violation of the Iowa Civil Rights Act (Count 4). On November 26, 2014, the court granted summary judgment in favor of CRST on Count 2. *See* November 26, 2014 Order (docket no. 32). On December 4, 2014, CRST filed the CRST Motion. Also on December 4, 2014, Harris filed the Harris Motion. On December 11, 2014, CRST filed a Resistance to the Harris Motion (docket no. 36) and Harris filed a Resistance to the CRST Motion (docket no. 37). On December 15, 2014, CRST filed a Reply to the Resistance to the CRST Motion ("CRST Reply") (docket no. 44). On December 17, 2014, Harris filed a Reply to the Resistance to the Harris Motion ("Harris Reply") (docket no. 46). On December 18, 2014, the court held a Final Pretrial Conference ("Hearing") and heard arguments on the Motions. *See* December 18, 2014 Minute Entry (docket no. 47). The Motions are fully submitted and ready for decision.

### III.  ANALYSIS

The court will first address the CRST Motion and then will address the Harris Motion.

### A.  CRST Motion

In the CRST Motion, CRST seeks to prevent Harris from offering evidence regarding:

(1)     That [CRST] has been involved in other lawsuits as plaintiff, defendant prior or subsequent to this lawsuit.

(2)     That [CRST] has been a party to other unrelated claims or settlements made either prior or subsequent to this lawsuit, or the amount sought or paid therein.

(3)     That [CRST] has not called to testify at trial any witness equally available to [Harris] in this action.

(4)     The number of attorneys or personnel practicing in the law firm representing [CRST] or the amount of resources available to conduct the investigation and defense of this case.

(5)     The financial condition of [CRST], including any reference to information which would tend to suggest to the jury that [CRST] is 'wealthy' and/or 'powerful' including information and documents relating to [CRST]'s  financial statements and income tax returns.

(6)     Reference to any corporations to which [CRST] is related as a parent, subsidiary or sister corporation, which are not parties to this lawsuit.

(7)     Any attempts or efforts by [CRST] to settle or any settlement discussions or negotiations entered into by [CRST], or any conduct of [CRST] during such negotiations.

(8)     Any statements or reports made or drafted by any person not present to testify or not subject to cross-examination on the contents of such statement or report.

(9)     Any suggestion to the jury, by argument or otherwise, what would have been the testimony of any witness not actually called to testify.

(10)    Any demands or requests before the jury for items contained in the files of [CRST] which have not been the subject of discovery in this case.

(11)    Opinions, statements, or testimony by any expert witness for [Harris] other than those disclosed in discovery.

(12)    Any exhibit or witness not previously disclosed to [CRST] through [Harris's] discovery responses in this matter.

CRST Motion at 2-3 (formatting omitted). The court will address each of CRST's requests in turn.

### 1.     Involvement in other lawsuits

Harris does not resist this portion of the CRST Motion. Accordingly, the court shall grant this portion of the CRST Motion.

### 2.     Other unrelated claims or settlements

Harris does not resist this portion of the CRST Motion. Accordingly, the court shall grant this portion of the CRST Motion.

### 3.     Not calling witnesses to testify

CRST requests that the court bar Harris from referencing the fact that CRST "has not called to testify at trial any witness equally available to [Harris]" as such evidence would confuse the issues, mislead the jury and unduly prejudice CRST. Brief in Support of the CRST Motion (docket no. 34-1) at 2. Harris argues that there is nothing inherently improper about referencing individuals who have not been called to testify and that whether to make such references is a matter of strategy. The court finds that a party's decision to call or not to call certain witnesses is relevant and admissible. Accordingly, the court shall deny this portion of the CRST Motion.

4

### 4. Number of attorneys or personnel and amount of available resources

Harris does not resist this portion of the CRST Motion. Accordingly, the court shall grant this portion of the CRST Motion.

### 5. Financial condition of CRST and related references

CRST requests that the court bar any mention of CRST's financial condition and any reference suggesting that the company is wealthy or powerful, pursuant to Federal Rules of Evidence 401-403. Harris argues that "CRST's financial condition and/or ability to pay are legitimate factors for the jury to consider . . . in the context of punitive damages." Resistance to the CRST Motion at 3.

As stated at the Hearing, references to CRST's financial status will not be permitted unless and until the jury returns a verdict for Harris. Accordingly, the court shall grant this portion of the CRST Motion. If the jury returns a verdict that would support an award of punitive damages, the court will permit the parties to present additional evidence and argument on the issue of punitive damages.

### 6. Reference to any related corporations

Harris does not resist this portion of the CRST Motion. Accordingly, the court shall grant this portion of the CRST Motion.

### 7. Settlement discussions in the instant action

Harris does not resist this portion of the CRST Motion. Accordingly, the court shall grant this portion of the CRST Motion.

### 8. Statements or reports made or drafted by individuals not testifying at trial

CRST requests that the court prevent Harris from offering into evidence, reading from or referring to "any statements or reports of individuals not present to testify at trial." Brief in Support of the CRST Motion at 3.

CRST requests that the court bar Harris from introducing medical records and reports because Harris did not identify the treating physicians or makers of the records as

witnesses. However, the physicians are identified in the parties' Proposed Final Pretrial Order and their testimony was discussed at the Hearing. Therefore, the court shall deny this portion of the CRST Motion regarding Harris's medical records.

CRST also argues that the written statement of Joe Christian is inadmissible hearsay and should be excluded. Harris concedes that this statement is hearsay, but argues that it should be admitted under the residual hearsay exception, contained in Federal Rule of Evidence 807.

Federal Rule of Evidence 807 states that

> a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804 [if] . . . the statement has equivalent circumstantial guarantees of trustworthiness; . . . it is offered as evidence of a material fact; . . . it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and . . . admitting it will best serve the purposes of [the Federal Rules of Evidence] and the interests of justice.

Fed. R. Evid. 807. However, "the residual hearsay exception [is] to 'be used very rarely, and only in exceptional circumstances.'" *United States v. Peneaux*, 432 F.3d 882, 893 (8th Cir. 2005) (quoting S. Rep. No. 1277, 93d Cong., 2d Sess., at 20 (1974)). The residual hearsay exception "appl[ies] only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1279 (11th Cir. 2009) (quoting *United States v. Wright*, 363 F.3d 237, 245 (3d Cir. 2004)) (alteration in original) (internal quotation marks omitted).

"[T]rustworthiness is analyzed under a broad totality of the circumstances test." *United States v. Halk*, 634 F.3d 482, 489 (8th Cir. 2011) (quoting *United States v. Shields*, 497 F.3d 789, 794 (8th Cir. 2007)) (alteration in original) (internal quotation marks omitted). To determine whether a statement has "circumstantial guarantees of

trustworthiness . . . courts should inquire into the reliability of and necessity for the statement." *United States v. Earles*, 113 F.3d 796, 800 (8th Cir. 1997) (quoting *United States v. Carlson*, 547 F.2d 1346, 1354 (8th Cir. 1976)) (internal quotation marks omitted); *see also United States v. Hughes*, 535 F.3d 880, 882 (8th Cir. 2008) (rejecting an out of court statement that lacked "indicia of reliability" and "was cumulative of [the defendant's] own testimony and added little to the [defendant's] claim"); *Stokes v. City of Omaha*, 23 F.3d 1362, 1366-67 (8th Cir. 1994) (finding that an affidavit "lack[ed] the sufficient guarantees of trustworthiness required by [the residual hearsay exception]" because it did not include context, times and locations for the alleged statements, despite being sworn under oath).

The statement at issue was apparently written by Joe Christian, a former employee of CRST, before he died. Resistance to the CRST Motion at 3-5. It recounts his interactions with Harris and various CRST employees and alleges that he was terminated by CRST along with Harris. Statement of Joe Christian (docket no. 37-2). The statement was notarized on February 22, 2013. Harris argues that the statement should be admitted because "one of the hotly disputed facts at trial will be whether Operations Manager Marcus Schneider terminated Harris'[s] employment" and Joe Christian's statement will show that both Joe Christian and Harris were terminated on the same day. Resistance to the CRST Motion at 4. Harris argues that Joe Christian's statement meets each prong of Federal Rule of Evidence 807.

The court disagrees. The statement does not have sufficient guarantees of trustworthiness to justify admitting it at trial. Although the statement was notarized, it was not made under penalty of perjury. Furthermore, CRST did not have the opportunity to cross examine Joe Christian before his death. These factors weigh against the reliability of the statement and, consequently, the court finds that the statement is not sufficiently trustworthy to qualify for admission under the residual hearsay exception. Additionally,

although the statement may be relevant, it is not "more probative on the point for which it is offered than any other evidence." Fed. R. Evid. 807. Indeed, the relevant portions of Joe Christian's statement would be cumulative of other evidence. Harris can testify to the facts underlying his employment status, as well as his knowledge of Joe Christian's employment to the extent that Joe Christian's employment is relevant. Harris can also cross examine CRST's witnesses regarding the relevant facts at issue. Finally, although Harris argues that the statement is necessary to rebut Schneider's testimony about Harris's employment status, Harris himself will be able to offer such testimony.

Because Joe Christian's statement does not meet the test specified in Federal Rule of Evidence 807, it constitutes inadmissible hearsay. Accordingly, the court shall grant this portion of the CRST Motion regarding the statement of Joe Christian.

### 9. *Suggestions regarding testimony of witnesses not called to testify*

CRST requests that the court bar the testimony of "Patty Christian, the widow of Joe Christian, . . . regarding Mr. Christian's employment with [CRST]." Brief in Support of the CRST Motion at 4. CRST argues that Patty Christian's testimony would constitute inadmissible hearsay. In light of the court's analysis in subsection 12, the court shall deny this portion of the CRST Motion as moot.

### 10. *Demands or requests for items not the subject of discovery*

Harris states that he "does not intend to make discovery requests of CRST at trial." Resistance to the CRST Motion at 6. Accordingly, the court shall grant this portion of the CRST Motion.

### 11. *Expert witnesses*

CRST requests that the court exclude the testimony of any experts who were not previously disclosed. Neither side has designated any experts for trial. Harris does not resist this portion of the CRST Motion, but notes that he intends to call doctors as treating physicians. Accordingly, the court shall grant this portion of the CRST Motion. To the

extent that any party views certain testimony as constituting expert testimony, the parties may object at trial and the court will rule at that time.

### 12. *Exhibits or witnesses not previously disclosed*

CRST requests that the court bar the testimony of any witness or exhibit not previously disclosed by Harris.[1] Harris argues that Patty Christian should be permitted to testify, despite the late disclosure, because Harris only recently became aware of Patty Christian's importance as a witness and her testimony is not hearsay. Resistance to the CRST Motion at 5-7. Harris also argues that it would be inappropriate for the court to exclude any evidence previously undisclosed, as there may be some evidence for which disclosure was not required or where the parties disagree as to whether disclosure occurred.

Federal Rule of Civil Procedure 26 requires disclosure of evidence. "If a party fails to provide information or identify a witness as required by [Federal Rule of Civil Procedure] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) (stating that the Federal Rules of Civil Procedure "permit a court to exclude untimely evidence unless the failure to disclose was either harmless or substantially justified"). Disclosure is required even if witnesses were "known to [a party] either through [the party's] own discovery disclosures and responses or through [the opposing party's] discovery responses." *Troknya v. Cleveland Chiropractic Clinic*, 280 F.3d 1200, 1205 (8th Cir. 2002).

---

[1] CRST argued in subsection 8 that Patty Christian's testimony constitutes inadmissible hearsay. In light of the court's decision regarding Patty Christian's testimony, the court will not address whether her testimony would constitute hearsay.

Harris argues that his nondisclosure of Patty Christian does not prejudice CRST because "CRST has had notice of her husband's statement since Harris'[s] unemployment claim proceedings" and her testimony should, therefore, not be a surprise. Resistance to the CRST Motion at 6. CRST argues that it would be prejudiced "because [it] has not had the opportunity to fully and adequately conduct discovery." CRST Motion at 5. The fact that CRST was aware of Joe Christian's statement does not excuse Harris's responsibility to disclose Patty Christian as a witness. As stated at the Hearing, the failure to disclose was due to Harris not realizing the importance of Patty Christian's testimony. This is not a substantial justification for late disclosure. Moreover, the court provided Harris an opportunity to supplement the record with regard to his efforts to contact Patty Christian. *See* December 29, 2014 Order (docket no. 48). Harris submitted nothing, and the deadline to do so has passed. Therefore, because Harris's nondisclosure was not substantially justified and allowing Patty Christian's testimony would result in unfair prejudice to CRST, the court shall grant this portion of the CRST Motion and shall not permit Patty Christian to testify.

With respect to other exhibits, CRST states that it has "not been provided with the records which [Harris] contends are his 'complete medical records.'" CRST Reply at 7. To the extent that records were not disclosed to CRST in violation of Federal Rule of Civil Procedure 26, that information will be excluded. However, the court shall reserve ruling on this portion of the CRST Motion until trial.

### B. Harris Motion

In the Harris Motion, Harris seeks to prevent CRST from offering evidence regarding:

    (1)    Any settlement negotiations and/or inquiries about potential settlement;

    (2)    Harris'[s] receipt of unemployment insurance benefits and/or the amount thereof;

<blockquote>

(3)    Harris'[s] pursuit of a worker's compensation claim against an employer subsequent to CRST;

(4)    The Iowa Civil Rights Commission's screening decision; and

(5)    Any criminal charges brought against Harris.

</blockquote>

Harris Motion at 2. The court will address each of Harris's requests in turn.

### 1.   *Settlement negotiations*

CRST does not resist this portion of the Harris Motion. Accordingly, the court shall grant this portion of the Harris Motion.

### 2.   *Unemployment insurance benefits*

CRST does not resist this portion of the Harris Motion. Accordingly, the court shall grant this portion of the Harris Motion.

### 3.   *Harris's pursuit of a worker's compensation claim*

Harris argues that CRST should not be allowed to introduce evidence that Harris pursued a worker's compensation claim against another employer because it "is irrelevant, unduly prejudicial[] and inadmissible prior act evidence." Brief in Support of the Harris Motion (docket no. 35-1) at 6 (formatting omitted). In response, CRST contends that it "intends to offer this evidence solely with respect to [Harris's] alleged damages and not as evidence of his character." Resistance to the Harris Motion at 2. CRST contends that "[e]vidence of [Harris's] workers' compensation claim following his separation from employment" is relevant because the jury may consider such evidence to determine "what [Harris] would have earned had he remained employed." *Id.* Harris argues that evidence of his subsequent worker's compensation claim is irrelevant to a potential damages calculation because he "would never have been forced into the circumstances that caused his injury, but for CRST's illegal discrimination and violation of the FMLA." Harris Reply at 3.

Once discrimination has been found, there is a strong presumption that the plaintiff is "entitled to a back pay award on the basis of what [he] would have earned absent the discrimination, less any amount [he] could have earned in mitigation." *E.E.O.C. v. Delight Wholesale Co.*, 973 F.2d 664, 670 (8th Cir. 1992). The collateral source rule prohibits deducting worker's compensation benefits from an employee's back pay award. *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002). This rule not only supports the policy of ensuring that victims are made whole, but deters future discrimination by employers. *Id.* The collateral source rule appears to bar any deduction of worker's compensation, even when an injury is sustained following subsequent employment. *See Thurman v. Yellow Freight Sys, Inc.*, 90 F.3d 1160, 1171 (6th Cir. 1996) (rejecting the argument that worker's compensation received after an injury sustained through subsequent employment constituted "interim earnings paid in lieu of income after termination" rather than a collateral source of income). Therefore, even if an employee suffers an injury during subsequent employment and receives worker's compensation, the amount received for worker's compensation is not deductible from back pay under the collateral source rule.

Here, Harris sustained his injury during subsequent employment and received worker's compensation as a result. If CRST is found liable, the amount Harris received from worker's compensation cannot be used to calculate back pay. Accordingly, the court shall grant this portion of the Harris Motion. CRST may not introduce evidence that Harris pursued a worker's compensation claim against another employer.

### 4.    *Iowa Civil Rights Commission's screening decision*

CRST does not resist this portion of the Harris Motion. Accordingly, the court shall grant this portion of the Harris Motion.

### 5.     *Harris's criminal history*

Harris requests that the court bar evidence or argument of any crimes he allegedly committed. He argues that such evidence is impermissible character evidence and, to the extent that his crimes are relevant to the after-acquired evidence doctrine, CRST failed to plead it as an affirmative defense.

### a.     *Character evidence*

Harris argues that evidence of his criminal history is inadmissible under Federal Rules of Evidence 403 and 404(b)(1). Under Federal Rule of Evidence 404(b) "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). CRST states that it will not "offer evidence of [Harris's] prior criminal charges to show that he acted in conformity therewith," but to reflect on Harris's character for truthfulness pursuant to Federal Rule of Evidence 609. Resistance to the Harris Motion at 3-4. At the Hearing, Harris conceded that two felonies (mortgage fraud and felon in possession of a firearm) are admissible under Federal Rule of Evidence 609. Therefore, CRST may present evidence of these two crimes consistent with Federal Rule of Evidence 609. Accordingly, the court shall deny this portion of the Harris Motion with respect to Harris's two felony convictions.

Harris did not concede that evidence of a conviction for driving under the influence or any other criminal history would be admissible at trial. Under Federal Rule of Evidence 609, a party may "attack[] a witness's character for truthfulness by evidence of a criminal conviction" only for crimes punishable by imprisonment of more than one year or for crimes involving "a dishonest act or false statement." Fed. R. Evid. 609. Harris argues that any admission of this evidence would result in unfair prejudice pursuant to Federal Rule of Evidence 403. With respect to these other convictions, the court does not

have enough information to rule on this portion of the Harris Motion. Accordingly, the court shall reserve ruling with respect to this portion of the Harris Motion.

### b.    *After-acquired evidence doctrine*

At the Hearing, Harris argued that CRST should not be permitted to present evidence of Harris's criminal history pursuant to the after-acquired evidence doctrine because CRST did not plead after-acquired evidence as an affirmative defense. CRST argues that Harris failed to disclose that he had been convicted of certain crimes prior to his employment with CRST and "provid[ing] false information on an employment application[] is a dischargeable action." Resistance to the Harris Motion at 3.

The after-acquired evidence doctrine permits a reduction in damages for employees found to have engaged in misconduct. Under the after-acquired evidence doctrine, "even though the employer has violated [the law] . . . the employee's wrongdoing bears on the specific remedy to be ordered." *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995)). "[A]fter-acquired evidence of employee on-the-job misconduct, which would have resulted in that employee's discharge had the employer known of it," does not preclude recovery by the employee, but is relevant to determining remedies. *Sellers v. Mineta*, 358 F.3d 1058, 1061 (8th Cir. 2004). In that instance, if the employer is found liable for the employee's termination, "back pay should be awarded, but only 'from the date of the unlawful discharge to the date the new information [of the employee's misconduct] was discovered.'" *E.E.O.C. v. Dial Corp.*, 469 F.3d 735, 745 (8th Cir. 2006) (quoting *McKennon*, 513 U.S. at 362). The employer bears the burden of establishing that "the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone." *McKennon*, 513 U.S. at 362-63; *see Scott v. City of Sioux City, Iowa*, 23 F. Supp. 3d 1017, 1022-23 (N.D. Iowa 2014) (noting that the after-acquired evidence "defense applies when (1) an employee is discharged for an

allegedly-unlawful reason and (2) the employer later learns of other misconduct that, by itself, would have resulted in discharge had it come to the employer's attention").

Federal Rule of Civil Procedure 8(c) requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). This "pleading requirement is intended to give the opposing party both notice of the affirmative defense and an opportunity to rebut it." *First Union Nat'l Bank v. Pictet Overseas Trust Corp.*, 477 F.3d 616, 622 (8th Cir. 2007). The Eighth Circuit Court of Appeals has not identified a test for what constitutes an affirmative defense, but has stated that "if the defense involved is one that merely negates an element of the plaintiff's prima facie case . . . it is not truly an affirmative defense and need not be pleaded despite [Federal Rule of Civil Procedure] 8(c)." *Sanden v. Mayo Clinic*, 495 F.2d 221, 224 (8th Cir. 1974) (quoting 2A J. Moore, Moore's Federal Practice P8.27(2), at 1843 (2d ed. 1974)). Additionally, "[a]n affirmative defense has been described as '[a]ny matter that does not tend to controvert the opposing party's prima facie case as determined by the applicable substantive law.'" *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) (quoting 2A J. Moore, Moore's Federal Practice ¶ 8.27[3] (2d ed. 1985)) (second alteration in original). "In determining whether a particular argument is an affirmative defense, courts consider 'the logical relationship between the defense and the cause of action,' and the likelihood that the plaintiff will be unfairly surprised if the defense does not appear in the pleadings." *Id.* (quoting *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987)). The First Circuit Court of Appeals states that the "test for whether a given defense falls within [Federal Rule of Civil Procedure] 8(c) . . . is whether the defense 'shares the common characteristic of a bar to the right of recovery even if the general complaint were more or less admitted to.'" *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995) (quoting *Jakobsen v. Mass Port Auth.*, 520 F.2d 810, 813 (1st Cir. 1975)). "[F]ailure to plead . . . an affirmative defense results in a

waiver of that defense and its exclusion from the case." *Sayre v. Musicland Grp, Inc.*, 850 F.2d 350, 354 (8th Cir. 1988). However,

> [t]he general rule of waiver is more easily applied when a party fails to set forth one of the nineteen defenses specifically listed in [Federal Rule of Civil Procedure] 8(c); waiver becomes less clear when a party fails to assert affirmatively some 'other matter' that pre-existing federal case law has not clearly construed as 'constituting an avoidance or affirmative defense' under [Federal Rule of Civil Procedure] 8(c).

*Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1351 (11th Cir. 2007).

The Eighth Circuit has not explicitly addressed whether the after-acquired evidence doctrine constitutes an affirmative defense that must be pleaded. *See Sellers*, 358 F.3d at 1061 (stating that "[e]ven if the after-acquired evidence theory . . . is an affirmative defense that must be pleaded . . . ," the failure to plead the defense was excusable when the after-acquired evidence was discovered after filing an answer and the party alerted the court to its existence); *see also Harris v. Chand*, 506 F.3d 1135, 1138-39 (8th Cir. 2007) (upholding the admissibility of after-acquired evidence on the issue of damages when the defendant learned of the relevant misconduct during discovery). However, after-acquired evidence appears to fall within the category of matters that do not "tend to controvert the opposing party's prima facie case" and is "a bar to the right of recovery even if the general complaint were more or less admitted to." *Hassan*, 842 F.2d at 263 (quoting 2A J. Moore, Moore's Federal Practice ¶ 8.27[3] ) (internal quotation marks omitted); *Wolf*, 71 F.3d at 449 (quoting *Jakobsen*, 520 F.2d at 813) (internal quotation marks omitted). The after-acquired evidence of Harris's misconduct does not bear directly on whether CRST violated the law by terminating Harris. Rather, it bears on the extent of damages should CRST be found liable. Therefore, the court will assume that the after-acquired evidence doctrine constitutes an affirmative defense for the purposes of the Harris Motion.

Even assuming that after-acquired evidence is an affirmative defense that must be pleaded under Federal Rule of Civil Procedure 8(c), failure to assert a defense "is not fatal when the defense is raised in the trial court in a manner that does not result in unfair surprise." *United States ex rel. Kraxberger v. Kansas City Power and Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014) ("[O]ne month's notice [is] 'sufficient to preclude unfair surprise.'") (quoting *First Union Nat'l Bank*, 477 F.3d at 623) (internal quotation marks omitted); *First Union Nat'l Bank*, 477 F.3d at 623 ("We have . . . eschewed a literal interpretation of the Rule that places form over substance, and instead have held that '[w]hen an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, . . . technical failure to comply with Rule 8(c) is not fatal.'") (quoting *Fin. Timing Publ'ns, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 944 n.9 (8th Cir. 1990)) (second and third alterations in original) (internal citations and quotation marks omitted). Additionally, waiver of an affirmative defense "is not absolute and . . . inclusion of an otherwise-waived issue in a final pre-trial order may, in some cases, preserve or revive the issue for trial." *Dollar v. Smithway Motor Xpress, Inc.*, 710 F.3d 798, 808 (8th Cir. 2013) (discussing failure to plead mitigation of damages). "An unpled affirmative defense identified in the pretrial order is no exception to the rule that issues identified in the pretrial order supersede the pleadings. Its absence from the original pleadings therefore does not work a forfeiture of the right to assert the defense at trial." *Friedman & Friedman, Ltd. v. Tim McCandless, Inc.*, 606 F.3d 494, 498 (8th Cir. 2010).

CRST did not identify after-acquired evidence as an affirmative defense in the Answer. Answer (docket no. 11) at 5-6. CRST stated that it discovered Harris's misconduct only "recently." Resistance to the Harris Motion at 3. However, CRST listed after-acquired evidence as an issue in the pretrial order and it was discussed at the Hearing. Final Pretrial Order (docket no. 53) at 8 ("The introduction of after-acquired evidence regarding Harris'[s] prior criminal convictions to establish that CRST would have

terminated Harris for providing false information on his job application."). The proposed pretrial order was submitted by the parties on December 15, 2014, more than one month prior to the trial date. Therefore, although CRST did not plead after-acquired evidence as an affirmative defense, it is listed as an issue in the pretrial order and Harris has not suffered an "unfair surprise" with regard to the defense. Accordingly, CRST shall be permitted to argue after-acquired evidence despite not pleading it as an affirmative defense.

The court finds that Harris's nondisclosure of his criminal history is relevant under the after-acquired evidence doctrine to calculate damages if CRST can establish the requisite elements of the after-acquired evidence doctrine. Therefore, because after-acquired evidence was asserted in the pretrial order and it is relevant, CRST may argue after-acquired evidence as a defense with regard to damages. Accordingly, the court shall deny this portion of the Harris Motion with respect to the after-acquired evidence doctrine.

## IV. CONCLUSION

Consistent with the foregoing, CRST's Motion in Limine (docket no. 34) is **GRANTED IN PART** and **DENIED IN PART**. With respect to other exhibits not previously disclosed, the court **RESERVES RULING**. Harris's Motion in Limine (docket no. 35) is **GRANTED IN PART** and **DENIED IN PART**. With respect to Harris's criminal history, except for the mortgage fraud and felon in possession convictions, the court **RESERVES RULING**. Each party is charged with the responsibility of cautioning its witnesses as to the substance of this order. If during the presentation of evidence a party believes that a prohibited subject has become relevant, the party may request an opportunity to argue relevance outside the presence of the jury.

**IT IS SO ORDERED.**

**DATED** this 20th day of January, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA